# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 24-CV-2855 (RER)

---

WU LONG CHEN

VERSUS

M. MILLER

---

**MEMORANDUM & ORDER**

January 13, 2025

---

**RAMÓN E. REYES, JR., United States District Judge:**

Wu Long Chen ("Petitioner"), who is currently incarcerated at Green Haven Correction Facility, brings this pro se petition under 28 U.S.C. § 2254 alleging that his judgment of conviction violated his constitutional rights. (ECF No. 1, Petition ("Pet.")). Petitioner argues that: (1) admission of the autopsy report through a medical examiner who did not perform the autopsy violated his right to confrontation (Pet. at 5[1]), (2) inflammatory and speculative remarks in the prosecutor's summation rendered the trial unfair (Pet. at 7), and (3) the sentence was unduly harsh and excessive (Pet. at 8).

After a careful review of the record, and for the reasons set forth herein, the petition is DENIED.[2]

---

[1] Page numbers for ECF filings are to the ECF-generated PDF page numbers.

[2] The Court acknowledges and offers its deep gratitude to Runbang Mao, a judicial intern and second-year law student at Columbia Law School, for his assistance in researching and drafting this memorandum and order.

## **BACKGROUND**

On December 7, 2015, Petitioner and Ying Guan Chen ("Chen"), a man with whom Petitioner had a family feud, attended a wedding in Brooklyn, New York. (ECF No. 7-14 Ex. N – MVI_0258 ("Interview 1"), at 5:58–6:26, 11:42–12:48). Petitioner followed Chen out of the wedding and shot Chen three times with a gun. (Interview 1, at 6:26–7:10). Chen was rushed to the hospital, where he was soon pronounced dead. (ECF No. 7-3 Ex. C ("Trial Tr."), at 66:6–67:17, 269:7–14). Petitioner later stated that he killed Chen for personal revenge, and that to avenge his family he had wanted to kill any member of Chen's family that night. (Interview 1, at 10:37–13:00, 14:45–15:28). Petitioner also stated he always carries a gun with him for protection. (*Id.* at 10:17–10:38, 11:31–11:42).

On December 31, 2015, U.S. Customs and Border Protection officers apprehended Petitioner near the Mexican border, where he had been denied entry to Mexico. (Trial Tr. at 245:15–250:12). On June 21, 2017, Petitioner appeared for a jury trial in the Kings County Supreme Court. (*Id.* at 2).

At trial Chen's daughter, Xiao Mei Chen, testified that she went to the morgue on December 8, 2015, and identified her father's body from pictures. (*Id.* at 20:10–11, 22:22–23:13). Police Officer Robert White testified that, on December 7, 2015, he observed Chen "bleeding heavily" from his face and head and that Chen was transported to the Lutheran Medical Center by ambulance. (*Id.* at 57:19, 59:4–61:10). He also testified that the next day he identified a body at the morgue as Chen. (*Id.* at 61:16–62:1).

Testifying as an expert in forensic pathology, Dr. Hammers stated that although she did not perform Chen's autopsy, she reviewed Chen's entire medical examiner case file, in addition to other information, and came to an independent conclusion that Chen

died from the gunshot wounds to his head and chest, and that the manner of his death was homicide. (*Id.* at 261:16, 267:22–268:20, 288:9–22). Petitioner's attorney explicitly stated that he had no objection both when the prosecution offered Dr. Hammers as an expert in forensic pathology and when it moved to admit into evidence Chen's medical examiner case file and a body sketch from the autopsy. (*Id.* at 267:10–13, 269:21–271:21, 273:25–274:8). Petitioner's attorney also did not object to the admission into evidence of photographs taken during the autopsy. (*Id.* at 274:10–275:4). In fact, Chen's counsel made no objection to Dr. Hammers' testimony at all. (*See id.* at 261:16–291:9). Upon cross-examination, Dr. Hammers admitted she was unable to determine which specific gunshot in the video of the shooting (ECF No. 7-14 Ex. N – Video_Compilation_FINAL062617 ("Compilation Video")) caused a particular injury to Chen. (Trial Tr. at 290:19–291:5).

The record shows that, in addition to Chen's autopsy report (ECF No. 7-4 Ex. D ("Trial Exs.") at 7–33) and Dr. Hammers' testimony, the jury was presented with evidence including the Compilation Video; two videos of Petitioner's interview with police detectives (Interview 1; ECF No. 7-14 Ex. N – MVI_0260 ("Interview 2")); the Miranda Warning Petitioner signed (Trial Exs. at 3–5); the weapon, bullets, and shell casings recovered from the crime scene (Trial Tr. at 133:17–137:10); and photos of the crime scene taken shortly after the shooting (Trial Tr. at 122:2–124:11). The Compilation Video shows Petitioner and Chen present at the wedding on December 7, 2015; these two individuals exiting the venue; and Chen being followed, chased, and shot by the individual identified as Petitioner. (Compilation Video at 0:00–12:30). In Interview 1, Petitioner recounted that

he killed Chen in revenge for his relatives having been assaulted by Chen's family twenty years ago. (Interview 1 at 10:37–13:00).

In his summation, Petitioner's attorney attacked the integrity of the state's case, arguing that the police detectives "didn't have a case when they went to Texas" to take Petitioner into custody because they went without a warrant, and accusing one of the detectives of asking leading questions during the interview and not comprehending Petitioner's language. (Trial Tr. at 333:23–24, 335:11–13, 336:3–10). He characterized the "level of justice" surrounding Petitioner's arrest as "laughable." (*Id.* at 336:14–20).

In the people's summation, the prosecutor played the Compilation Video in open court. (*Id.* at 347:25–358:11). Directing the jury's attention to person in the video identified as Petitioner, the prosecutor said: "Here is the predator. This is the victim looking into his bag, followed by his predator stalking him. He is waiting for the right moment, for the right location, for the right time to execute his plan." (*Id.* at 353:14–17). Regarding the shooting, the prosecutor said: "Look how close the [Petitioner] is to the victim at this point, shooting him over and over again before he cowardly runs off like a thief in the night." (*Id.* at 354:22–25). Referring to Petitioner's attempt to enter Mexico, the prosecutor said: "He tried to make his escape, but he was smart enough to know not to buy an airline ticket to fly out of the country . . . . He ends up . . . in a bus, attempting to cross the border into Mexico." (*Id.* at 358:24–359:4). The prosecutor implicitly suggested that such actions evince Petitioner's consciousness of guilt[3] (*id.* at 359:5–8), although he earlier requested the trial court not to give a consciousness of guilt jury charge (*id.* at 321:3–7). The

---

[3] Specifically, the prosecutor said: "I ask you, are those the actions consistent with a person innocent of this crime? I submit to you, it is not. There was a specific purpose why he chose that means to get out of the country." (Trial Tr. at 359:5–8).

prosecutor further commented that "we should all be equally thankful [] that the Mexican authorities, for whatever reason, denied him entry into that country." (*Id.* at 359:9–12). Petitioner's attorney did not raise any objection to these comments at trial. (*See id.* at 353:14–403:25).

In his jury charge, the trial judge instructed the jury "to consider *only* the evidence," and explained that "the evidence [] includes the testimony of witnesses, the exhibits that were received in evidence and any stipulations entered into by the attorneys." (*Id.* at 378:25–379:4) (emphasis added).

The jury unanimously found Petitioner guilty of one count of murder in the second degree and one count of criminal possession of a weapon in the second degree. (*Id.* at 400:14–403:5). On August 1, 2017, Petitioner was sentenced to consecutive terms of imprisonment of twenty-five years to life for murder in the second degree and fifteen years for criminal possession of a weapon in the second degree, with five years of post-release supervision. (ECF No. 7-5 Ex. E ("Sent'g Tr.") at 2, 8:25–9:5).

Petitioner appealed his conviction to the Appellate Division, Second Department, on the same grounds asserted in this petition. (ECF No. 7-6, Defendant's Brief on Direct Appeal ("Def.'s App. Br."), at 24–37). On November 2, 2022, the Appellate Division affirmed Petitioner's conviction and sentence. (ECF No. 7-8, Appellate Division Order ("App. Div. Order") at 2); *People v. Chen*, 210 A.D.3d 702 (2d Dep't 2022). It held that Petitioner's confrontation claim was "unpreserved for appellate review," pursuant to New York Criminal Procedure Law ("CPL") § 470.05(2), and was in any case harmless error (App. Div. Order at 2–3); that Petitioner's summation claim was also unpreserved, and in any case did not deprive Petitioner of a fair trial (*id.* at 3); and that Petitioner's sentence

was not excessive (*id.*). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on February 23, 2023 (ECF No. 7-11); *People v. Chen*, 39 N.Y.3d 1081 (2023).

By *pro se* papers dated February 25, 2024, Petitioner moved in the Kings County Supreme Court to vacate his judgment and set aside his sentence pursuant to CPL §§ 440.10 and 440.20, alleging violations under the Fourth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966), and arguing that his sentence is excessive. (ECF No. 7-12). On March 21, 2024, Petitioner filed the instant habeas petition. (Pet. at 15). By letter dated May 16, 2024, Petitioner requested that his petition be held in abeyance during the pendency of his 440.10 and 440.20 proceeding. (ECF No. 4 at 1). Respondent ("State") filed its opposition to the petition on July 18, 2024. (ECF No. 7). On July 30, 2024, the Court denied without prejudice Petitioner's request for abeyance. (ECF No. 9). On September 27, 2024, the Kings County Supreme Court summarily denied Petitioner's 440.10 and 440.20 motion. (ECF No. 10 at 1, 19). By letter dated October 13, 2024, Petitioner requested this Court to appoint counsel to assist him with this petition. (ECF No. 12). The Court denied Petitioner's request without prejudice on October 24, 2024. (ECF No. 11 at 3).

## DISCUSSION

I.    Petitioner's Claims Are Procedurally Barred

The Appellate Division's application of the contemporaneous objection rule to bar appellate review of Petitioner's claims constitutes an adequate and independent state ground barring federal habeas review. Petitioner fails to establish any exceptions to this procedural default.

A. The Appellate Division's Denial of Petitioner's Confrontation and Summation Claims Constitutes an Adequate and Independent State Law Ground of Decision Barring Federal Habeas Review

A federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). For example, the adequate and independent state ground doctrine bars federal habeas where "a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). Such holding should be honored even if the state court made an alternative holding on the merits of the federal claim. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

New York's contemporaneous objection rule requires a party to preserve issues for appeal by timely objecting in a way that brings attention to the specific error, at a time when the court where the error occurred has an opportunity to correct it. CPL § 470.05(2). Failure to properly object leads to procedural default of the party's claim and constitutes an adequate and independent state law ground barring federal habeas review. *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012).

On direct appeal from his state court conviction, Petitioner argued that his right to confrontation was violated because he was not afforded the opportunity to cross-examine the medical doctor who produced the autopsy report, and that the prosecutor's improper summation remarks deprived him of a fair trial—two of the same three claims Petitioner raises here. (Def.'s App. Br. at 24–35; Pet. at 5–8). However, the Appellate Division rejected Petitioner's confrontation and summation claims after finding them unpreserved

for appellate review under the contemporaneous objection rule in CPL § 470.05(2). (App. Div. Order at 2–3).

These findings are indisputably independent of any determination on the merits of those claims and sufficient to reject them, even though the Appellate Division made alternative holdings on the merits. (*Id.*); *see Downs*, 657 F.3d at 102; *Harris*, 489 U.S. at 264 n.10.

With independence established, the Court considers adequacy. A state ground of decision is adequate if it is "firmly established and regularly followed," *Downs*, 657 F.3d at 102 (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)), meaning that case law interpreting it "displays consistent application in a context similar to" the habeas case being considered, *Richardson v. Greene*, 497 F.3d 212, 219–20 (2d Cir. 2007) (finding New York's contemporaneous objection rule adequate because a New York court invoked that rule in a factually similar case). The Second Circuit has held repeatedly that New York's contemporaneous objection rule is firmly established and regularly followed. *Downs*, 657 F.3d at 104 (collecting cases). New York courts have regularly applied the contemporaneous objection rule as a procedural bar to claims of confrontation right violations and improper summation comments. *See People v. Copeland*, 229 A.D.3d 564, 565 (2d Dep't 2024) (finding unpreserved defendant's claim that his right to confrontation was violated by admission of victim's autopsy report through testimony of a medical examiner who did not participate in autopsy); *People v. Nasyrova*, 230 A.D.3d 1161, 1162–63 (2d Dep't 2024) (finding defendant's claim of deprivation of fair trial by improper prosecutorial summation comments to be unpreserved as he failed to object to those

remarks at trial). The Appellate Division's application of the rule here was thus an adequate state ground.

However, even if it is "firmly established and regularly followed," a state ground may be rendered *inadequate* in "exceptional cases" where the rule upon which the state court relied is "exorbitant[ly]" misapplied. *Downs*, 657 F.3d at 102 (quoting *Lee v. Kemna,* 534 U.S. 362, 376 (2002)). Exorbitance turns on whether "the state's application serves a legitimate state interest." *Id*. The Supreme Court in *Lee* provided three "guideposts" to determine the legitimacy of the state interest:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (citing *Lee*, 534 U.S. at 381–85). The third guidepost is the "most important." *Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007) (quoting *Lee*, 534 U.S. at 382).

Analyzing each guidepost in turn, the Court finds that the Appellate Division's use of the contemporaneous objection rule to find Petitioner's confrontation and summation claims unpreserved for appellate review served a legitimate state interest and were not "exorbitant" misapplications of the rule.

First, where, as here, "the alleged procedural violation was the defendant's failure" to object at trial, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court." *Garvey*, 485 F.3d at 719. However, per the second clause of the first guidepost, Petitioner's perfect compliance with the state rule "would

have had an impact on the trial court's decision": Had Petitioner complied by timely objecting at trial, the trial judge "would have had the opportunity to consider" whether the autopsy report and the prosecutor's summation comments "should be suppressed." *Id.* (finding that, where perfect compliance could have impacted the trial court's decision, application of New York's contemporaneous objection rule was not exorbitant).

Second, New York courts have regularly demanded compliance in cases with facts similar to Petitioner's. *See, e.g.*, *Copeland*, 229 A.D.3d at 565 (applying contemporaneous objection rule to bar claim that admission of autopsy report violated the defendant's confrontation right); *Nasyrova*, 230 A.D.3d at 1162–63 (applying contemporaneous objection rule to bar claim that improper prosecutorial summation comments deprived the defendant of a fair trial). Additionally, no sudden or unanticipated event led to Petitioner's non-compliance—indeed, Petitioner had ample opportunity to object at trial to the autopsy report and prosecutor's summation remarks but failed to do so. *Cf. Garvey*, 485 F.3d at 719 (explaining that, in *Lee*, application of the state rule was exorbitant because "the state courts had never before applied the state rule in question" in the "unique circumstances" of the case, where the petitioner's noncompliance was attributable to a "sudden or unanticipated event." (citing *Lee*, 534 U.S. at 382)).

Third, application of a state procedural rule is exorbitant if, given what the defendant has already done to comply with the rule, demanding additional efforts on his part to achieve perfect compliance would not serve any legitimate state interest. *See Garvey*, 485 F.3d at 719 (summarizing the *Lee* Court's finding that it was "bizarre" to require perfect compliance when, "although the form of [the defendant]'s continuance motion was defective, he had presented to the trial court all of the information that would

10

have been included in a properly served motion" (citing *Lee*, 534 U.S. at 383–85)). Here, far from violating only "the formal requirements" or "some technical aspect" of the contemporaneous objection rule, *id.* at 720, Petitioner did nothing at all to comply. *Compare Lee*, 534 U.S. at 383–85, *with Garvey*, 485 F.3d at 720 (finding "the defendant violated the very essence of [the contemporaneous objection rule]" by failing to object at trial). Since the rule's basis "is that the trial court must be given a fair opportunity to rule on an issue of law before it can be raised on appeal," demanding compliance serves "the [legitimate state] interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error." *Garvey*, 485 F.3d at 720.

Because Petitioner's compliance with the contemporaneous objection rule would have impacted the trial court's decision, New York courts require compliance in similar situations, and demanding additional efforts to comply serves a legitimate state interest, the application of the rule in this case is not exorbitant. The contemporaneous objection rule is thus an adequate and independent state ground of decision barring federal habeas review of Petitioner's claims.

B. Petitioner Fails to Establish any Exceptions to the Bar on Habeas Review of Procedurally Defaulted Claims

There are "two exceptions to [the] bar on habeas review of procedurally defaulted claims." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012). To obtain review of such claims, Petitioner must demonstrate either "'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* (quoting *DiSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006)). There are two ways to establish "cause." *Id.* First, cause exists if "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Id.* (citing *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)). "Second, futility

may constitute cause 'where prior state case law has consistently rejected a particular constitutional claim.'" *Id*. at 111–12 (quoting *DiSimone*, 461 F.3d at 191). However, "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id*. (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). To show actual "prejudice," the error must have resulted in "substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions." *Id*. at 112 (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)). To show "actual innocence," Petitioner must "support his allegations . . . with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has failed to show either cause and prejudice or actual innocence. He does not allege that some external factor prevented him from raising an objection at trial, or that raising an objection would have been futile. Even if the trial court erred in admitting the autopsy report into evidence and allowing the prosecutor's summation to go forward, that could not have substantially prejudiced Petitioner, as discussed *infra* in Part II. Also, Petitioner has not presented any "new reliable evidence . . . that was not presented at trial" to demonstrate his innocence. *Schlup*, 513 U.S. at 324. Petitioner's claims are procedurally barred from habeas review.

II.  Petitioner's Claims Fail on the Merits

Even were the Court to review Petitioner's claims, they would fail on the merits. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings* unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1) (emphasis added).

"A principle is 'clearly established Federal law' for [section] 2254(d)(1) purposes 'only when it is embodied in a [Supreme Court] holding,' framed at the appropriate level of generality." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (alteration in original) (first quoting *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); then citing *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)). "An 'unreasonable application' occurs when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Alvarez v. Ercole*, 763 F.3d 223, 229 (2d Cir. 2014) (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Such an unreasonable application of clearly established federal law "must be objectively unreasonable, [and] not merely wrong." *Id.* (alteration in original) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). "[A] state-court decision is not unreasonable if '"fairminded jurists could disagree" on [its] correctness.'" *Davis v. Ayala*, 576 U.S. 257, 269 (2015) (second alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). To adjudicate a state prisoner's federal claim on the merits, a state court need not "explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Even if a petitioner's federal constitutional rights were violated, he is not entitled to habeas relief if the violation is harmless error. *See Davis*, 576 U.S. at 267–68. "A state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." *Brown v. Davenport*, 596 U.S. 118, 127 (2022). A federal habeas court reviews a state court's determination of harmless error "under a two-part standard." *Hernandez v.*

*McIntosh*, No. 22 Civ. 2266 (CM) (RWL), 2023 WL 6566817, at *39 (S.D.N.Y. Oct. 10, 2023) (quoting *Krivoi v. Chappius*, No. 21-2934 (PR), 2022 WL 17481816, at *3 (2d Cir. Dec. 7, 2022) (summary order)), *report and recommendation adopted*, 2024 WL 2959688 (S.D.N.Y. June 11, 2024). First, under *Brecht v. Abrahamson*, 507 U.S. 619, 622–23 (1993), the petitioner must show that the trial error had a "substantial and injurious effect or influence" on the jury's verdict; for this assessment, the federal court considers the importance of the wrongly admitted evidence and "the overall strength of the prosecution's case." *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011) (quoting *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000)).

Second, under the AEDPA standard in section 2254(d)(1), the petitioner "must show that the state court's harmless error determination was an unreasonable application of federal law as determined by the Supreme Court." *Krivoi*, 2022 WL 17481816, at *3 (citing *Brown*, 596 U.S. at 127). Specifically, the petitioner must demonstrate that the state court unreasonably applied the test set forth in *Chapman v. California*, 386 U.S. 18 (1967), which requires that the prosecution establish the error was harmless beyond a reasonable doubt. *Krivoi*, 2022 WL 17481816, at *3. "[W]here AEDPA asks whether *every* fairminded jurist would agree that an error was prejudicial, *Brecht* asks only whether a federal habeas court *itself* harbors grave doubt about the petitioner's verdict." *Brown*, 596 U.S. at 136.

As discussed below, Petitioner's confrontation and summation claims fail on the merits because the Appellate Division's rejection of those claims was not contrary to nor an unreasonable application of clearly established Federal law, including *Chapman*. Even if Petitioner were correct that he was deprived of his Constitutional rights in the state court

proceedings, any error was harmless as it did not have a "substantial and injurious effect" on the jury's decision under *Brecht*. Habeas relief is thus barred.

A. <u>The Confrontation Claim Fails</u>

The Sixth Amendment's confrontation clause categorically prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); U.S. Const. amend. VI. Forensic reports are testimonial statements that are inadmissible without confrontation. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 658–59 (2011) (reaffirming *Melendez-Diaz*). Interpreting *Melendez-Diaz* and *Bullcoming*, the Second Circuit held that autopsy reports fall within this category of testimonial statements. *Garlick v. Lee*, 1 F.4th 122, 128–31 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1189 (2022).

Whether a confrontation clause violation amounts to harmless error depends on "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Cotto*, 331 F.3d at 254 (alteration in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Courts have applied the *Van Arsdall* factors to hold similar confrontation clause violations were harmless. *See, e.g.*, *Diaz v. Miller*, No. 22-1835, 2023 WL 4363245, at *5 (2d Cir. July 6, 2023) (finding violation of defendant's rights under confrontation clause was harmless where even a fully realized and damaging cross-examination of unavailable detective would have been irrelevant to establishing corresponding issue); *McBee v. Burge*, 644 F.

15

Supp. 2d 270, 284–86 (E.D.N.Y. 2009) (finding improper admission of testimonial statement was harmless where habeas petitioner made detailed confessions and prosecution placed minimal emphasis on inadmissible evidence); *United States v. McClain*, 377 F.3d 219, 222–23 (2d Cir. 2004) (finding confrontation clause violation by admission of testimonial statement harmless where overwhelming evidence existed of defendants' guilt).

On direct appeal and again in this habeas petition, Petitioner claims that he was denied the opportunity to cross-examine the medical examiner who prepared the autopsy report, and thus his confrontation right was violated. (Pet. at 5; Def.'s App. Br. at 24–31). The Appellate Division held that Petitioner's confrontation claim was meritless, or that any violation of Petitioner's confrontation right was otherwise harmless error. (App. Div. Order at 2–3). Before this Court, however, the Respondent does not dispute that Chen's autopsy report was testimonial, and so, under *Garlick,* Petitioner had the right to cross-examine the unavailable medical doctor who prepared it. (*See* ECF No. 7, Response to Order to Show Cause ("Resp't Br.") at 30); *see also Garlick*, 1 F.4th at 128. However, since the Appellate Division also held that any error in admitting the autopsy report was harmless (App. Div. Order at 2–3), Petitioner's confrontation claim can succeed on the merits on habeas review only if the improperly admitted evidence had a "substantial and injurious effect" on the jury's decision, *Fry*, 551 U.S. at 121–22 (citing *Brecht*, 505 U.S. at 637–38), and if the Appellate Division's harmlessness determination itself was unreasonable, *id.* at 119 (citing *Mitchell v. Esparza*, 540 U.S. 12, 124 (2003)).

Applying the *Van Arsdall* factors, the Court finds that the confrontation clause violation was harmless error. *See Van Arsdall*, 475 U.S. at 684. Even without the autopsy

report, the jury had ample additional evidence to find that Petitioner caused Chen's death. The Compilation Video clearly shows an individual wearing the same outfit that Petitioner wore earlier in the video shooting Chen with a handgun (with muzzle flashes visible) and disposing of the gun, as well as Chen bleeding profusely from multiple parts of his body immediately afterwards. (Compilation Video at 12:00–19:45). Petitioner confessed to police officers that he shot Chen three times with a gun on December 7, 2015. (Interview 1 at 5:58–7:10). The weapon, bullets, and shell casings recovered from the crime scene were exhibited at trial and admitted into evidence, corroborated by photos of the crime scene taken shortly after the shooting. (Trial Tr. at 133:17–137:10). The fact that Chen died shortly after the shooting was established by the testimony of Officer White, who witnessed a gunshot-wounded Chen being taken to hospital and identified his body at the morgue (*id.* at 60:2–62:1), and was corroborated by the testimony of Chen's daughter, who also identified his body at the morgue (*id.* at 22:22–23:13).

The jury also had ample evidence to find that Petitioner *intended* to cause Chen's death. Petitioner himself explained that he killed Chen in revenge for a feud between their families, and that he wanted to kill any member of Chen's family. (Interview 1, at 10:37–13:00, 14:45–15:28). The way Petitioner followed and chased Chen could have reasonably been interpreted as premeditation. (*See* Compilation Video at 5:50–12:30).

Accordingly, it is fair to conclude that the autopsy report was not important in the prosecution's case, was cumulative of other evidence, and was corroborated by other evidence and contradicted by none. Additionally, in light of the overwhelming strength of the prosecution's case overall and the fact that Petitioner's attorney was afforded the

opportunity to cross-examine every other witness,[4] the Appellate Division's finding of harmless error was not objectively unreasonable, and is thereby not unreasonable under AEDPA. Further, admitting the report did not cause actual prejudice, given the enormous weight of other evidence against Petitioner. As a result, even without procedural default, Petitioner's confrontation claim could not have entitled him to habeas relief.

B. The Summation Claim Fails

The Appellate Division held that the challenged prosecutorial comments were fair and did not prejudice Petitioner. (App. Div. Order at 3). "In order to reach the level of a constitutional violation, a prosecutor's remarks must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Garofolo v. Coomb*, 804 F.2d 201, 206 (2d Cir. 1986). "A prosecutor's improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant." *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam), *cert. denied*, 456 U.S. 989 (1982)). In determining whether "misconduct amounted to substantial prejudice," courts in this Circuit "examine 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" *Id*. (quoting *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir.1990)); *see also Gonzalez*, 934 F.2d 419 at 424. A court may presume that a jury understood and followed a trial court's limiting

---

[4] *See* Trial Tr. at 23:15–16, 30:9–32:13, 41:9–43:2, 54:13–56:22, 62:3–6, 67:19–24, 86:5–92:14, 104:9–10, 137:12–139:4, 145:13–146:20, 167:3–17, 208:7–216:19, 235:19–241:10, 253:7–8, 258:20–261:10, 289:24–291:6, 326:24–25.

instructions. *See United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (citing *Zafiro v. United States*, 506 U.S. 534, 540–41 (1993)).

The challenged comments in the prosecutor's summation did not amount to substantial prejudice to Petitioner. While the prosecutor's suggestion of consciousness of guilt was arguably improper, *see Morales v. Walsh*, No. 05-CV-2251 (DGT), 2008 WL 2047632, at *8 (E.D.N.Y. May 12, 2008) (finding it was improper for prosecutor to make a suggestion that had no evidentiary basis, but in the context of entire record, petitioner was not deprived of a fair trial), most of the comments were fairly made in response to the summation of Petitioner's attorney, which attacked the integrity of Petitioner's arrest in Texas. *See Walker v. Cunningham*, No. 08-CV-2735 (JG), 2008 WL 4737664, at *5 (E.D.N.Y. Oct. 28, 2008) ("A prosecutor has broad latitude during summation, particularly when responding to defense counsel's summation."). Also, the challenged comments were only a small portion of the prosecutor's summation, and therefore "much less likely to have a substantial effect on the jury's verdict." *Tankleff v. Senkowski*, 135 F.3d 235, 253 (2d Cir. 1998) (finding that the severity of prosecutorial misconduct "was mitigated by the brevity and fleeting nature of the improper comments"). Any effect of the prosecutor's comments on the verdict was further mitigated by the trial judge's instruction to the jury "to consider *only* the evidence" and his explanation that "the evidence [] includes the testimony of witness, the exhibits that were received in evidence and any stipulations entered into by the attorneys." (Trial Tr. at 378:25–379:4 (emphasis added)). This instruction made clear that the prosecutor's summation was not evidence. Finally, weighty evidence indicates Petitioner's guilt, as discussed above. As such, the Appellate Division was not unreasonable in determining that the prosecutor's summation did not amount to

a constitutional violation. Alternatively, even if it had been a violation, it did not have a "substantial and injurious" effect on the verdict, given the weight of the other evidence, nor was the Appellate Division's harmlessness determination itself unreasonable. Thus, notwithstanding the procedural bar, Petitioner is not entitled to habeas relief.

C. <u>The Excessive Sentence Claim Is Not Cognizable Upon Habeas Review</u>

To be eligible for habeas relief under section 2254, Petitioner must show that he is being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "It is well-settled law that '[n]o federal constitutional issue is presented where . . . the sentence falls within the range prescribed by the state law.'" *Holmes v. Yehl*, No. 22-CV-870 (KAM), 2024 WL 1836074, at *4 (E.D.N.Y. Apr. 24, 2024) (alterations in original) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)). Additionally, under New York Penal Law § 70.25, courts have discretion to impose consecutive sentences. As such, the consecutiveness of sentences is not cognizable on habeas unless it presents "arbitrary or capricious abuse of discretion" in violation of the Eighth Amendment, which occurs "only under extraordinary circumstances." *Herrera v. Artuz*, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) (first citing *Jones v. Hollins*, 884 F. Supp. 758, 761–62 (W.D.N.Y. 1995), *aff'd*, 89 F.3d 826 (2d Cir. 1995), then quoting *Salcedo v. Artuz*, 107 F. Supp. 2d 405, 414 (S.D.N.Y. 2000)).

Under New York law, murder in the second degree is a class A-I felony with maximum term of sentence of life imprisonment, N.Y. Penal Law §§ 70.00[2](a), 125.25; criminal possession of a weapon in the second degree is a class C felony with maximum term of sentence of fifteen years. N.Y. Penal Law §§ 70.00[2](c), 265.03. Petitioner was sentenced to twenty-five years to life imprisonment for the former and fifteen years of

imprisonment for the latter. (Sent'g Tr. at 8:25–9:5). Even though the two terms were imposed consecutively rather than concurrently, as Petitioner requests, each term is within the range prescribed by state law, and Petitioner's sentence overall is within the range prescribed by state law. Here, the state court's imposition of consecutive sentences was a proper exercise of its discretion under New York Penal Law § 70.25. Thus, the excessive sentence claim is not cognizable upon habeas review.

## **CONCLUSION**

For the reasons set forth above, the Court DENIES the petition.

A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies that any appeal of this Order would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Hon. Ramón E. Reyes, Jr.    Digitally signed by Hon. Ramón E. Reyes, Jr.
                            Date: 2025.01.13 13:28:15 -05'00'

_____
RAMÓN E. REYES, JR.
United States District Judge

Dated: January 13, 2025
       Brooklyn, NY